EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* BONIFACIO PÉREZ (*a*) PURO, acusado y apelante.

Núm. 15139.—*Sometido:* Noviembre 13, 1951. *Resuelto:* Noviembre 29, 1951.

*Arcilio Alvarado*, abogado del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui y J. Rivera Barreras, Fiscal del Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

De infringir el artículo 77 de la Ley núm. 6 de 30 de junio de 1936 (Ses. Ext., págs. 45, 95), conocida por "Ley de Espíritus y Bebidas Alcohólicas" (¹) fué acusado Bonifacio Pérez (²) ante el Tribunal de Distrito de Púerto Rico, Sección de San Juan. Visto el caso, y luego de oír prueba y de resolver adversamente a la defensa ciertas cuestiones de derecho que le fueron planteadas, el tribunal declaró culpable al acusado y le sentenció a sufrir dos meses de cárcel. Ahora éste alega que el tribunal inferior erró al dejar de aplicar la doctrina de *entrapment* y que la sentencia es contraria a la prueba.

La del Pueblo, que consistió exclusivamente en la declaración del agente de rentas internas José Antonio Maldonado, fué al efecto de que allá para el 18 de agosto de 1950

---

(¹) El artículo 77 de la Ley núm. 6 de 1936, supra, provee:

"Toda persona que tenga en su poder o a su disposición en cualquier sitio, productos sujetos a impuesto por esta Ley, sobre los cuales no se haya pagado el impuesto, con excepción de aquellas personas debidamente autorizadas por esta Ley, será culpable de un delito menos grave (*misdemeanor*),..."

(²) Según los autos a Bonifacio Pérez se le conoce también con los nombres de Purificación y Puro.

él visitó la casa del acusado, situada en la barriada Fanguito de Santurce; que habló con éste acerca de un ron, diciéndole el acusado que podía entregarle todo el ron que quisiera, pero que no tenía envases para echarlo; que convinieron en que el testigo le llevaría veintiuna latas que el acusado llenaría y le entregaría entre 3 y 4 de la madrugada del día 19, cerca del puente de báscula que existe en la carretera que conduce de Santurce a Bayamón; que el declarante fué a ese sitio a la hora acordada, acompañado de los agentes de rentas internas Pimentel y Torres; que allí vieron llegar al acusado acompañado de otros dos individuos, en una lancha de motor, con cinco envases de cinco galones de ron caña, ninguno de los cuales tenía adherido los sellos de rentas internas; que después de entregar esos cinco envases el acusado se fué y regresó con dieciséis envases adicionales, conteniendo cada uno cinco galones del mismo ron; que en ese momento no se arrestó a Pérez por haberse dado a la fuga, mas sí a los otros individuos. Planteada la defensa de *entrapment* en el momento de ofrecerse en evidencia los envases de ron, la misma fué reiteradamente declarada sin lugar, al igual que lo fué más tarde una moción de *nonsuit* presentada por el acusado, expresándose el tribunal al así hacerlo en la siguiente forma:

"La Corte concluye que la prueba de El Pueblo tendió a demostrar lo siguiente: que el agente de rentas internas que declaró, se personó en la residencia del acusado donde el acusado tenía unas pipas de miel; que con conocimiento de a lo que se dedicaba el acusado, le salió a comprar un ron; que de primera intención el acusado se negó, pero cuando le manifestó la cantidad que deseaba le dijo que si le conseguía los envases él le podía conseguir toda la cantidad de ron que quisiera; que el agente de rentas internas, en el momento en que hablaba con el acusado, se hacía pasar como una persona que se dedicaba a la venta de ron clandestino; que de acuerdo con ese convenio el agente de rentas internas le llevó veintiún envases donde se depositaron ciento cinco galones de ron caña, los que debían ser entregados cerca del puente de báscula, en la carretera que conduce de San Juan a Bayamón; que al llegar a ese sitio el acusado se presentó

en un vehículo de motor por la laguna, en una lancha, y había otro vehículo que no tenía motor—una yola—donde venían depositados los carboyes de ron caña; que además del acusado, había otras personas y que al acusado cerciorarse de que eran agentes de rentas internas, se dió a la fuga; que fué ocupada la cantidad de ron caña y las personas coacusadas fueron arrestadas."

Tanto el fiscal como la defensa manifestaron inmediatamente que no tenían sugestiones que hacer a esas conclusiones.

El acusado ofreció entonces prueba tendiente a demostrar que él se dedica al negocio de venta de mieles, mas no a la venta de ron; que si bien el agente de rentas internas José Antonio Maldonado le visitó y le salió a comprar cierta cantidad de ron él, sin embargo, le contestó que no se dedicaba a ese negocio; que fué Felipe Ramos Olmo, quien en ese momento se hallaba en la casa del acusado comprándole miel, quien se avino a venderle ron a Maldonado; que el acusado no estaba presente cuando Maldonado le entregó los envases a Ramos Olmo y que tampoco participó en forma alguna en la entrega del ron a éste en el puente de báscula. Al finalizar esa prueba el tribunal hizo constar que daba crédito a la del Pueblo, mas no a la del acusado, declarando culpable a éste.

La defensa de *entrapment* no procede cuando el agente u oficial de orden público tiene conocimiento de que el acusado es un violador de la ley y meramente se vale del artificio o del engaño para dar a éste la oportunidad de cometer el delito. Así se ha resuelto en innumerables casos. Véanse *Sorrells* v. *United States*, 287 U.S. 435, 77 L. ed. 413; 86 A.L.R. 249 y nota a la página 264; *O'Brien* v. *United States*, 51 F.2d 674 y casos citados en la página 678; 15 Am. Jur. 24, sec. 335. Toda vez que el tribunal inferior dió crédito a la prueba del Pueblo, no podemos decir que el apelante fuera entrampado.

Por otra parte la de *entrapment* es una defensa afirmativa, que al ser invocada admite que el acto imputado al acu-

sado como constitutivo de delito público fué por el cometido. Véanse *People* v. *Lee*, 48 P.2d 1003, 1007; *People* v. *Johnson*, 222 P.2d 58, 59; *United States* v. *Kaiser*, 138 F.2d 219; *People* v. *Billingsley*, 139 P.2d 362. Como se ha visto, la prueba del acusado, lejos de admitir el acto imputádole tendió a negar toda participación en el mismo, y la corte no dió crédito a ella. Bajo las circunstancias reseñadas el tribunal inferior actuó acertadamente al declarar sin lugar la defensa de *entrapment*.

Respecto al alegado error de que la sentencia es contraria a la prueba bastará decir que el acusado meramente dice en su alegato que somete el mismo "por el examen que se haga del récord del caso" y que la lectura cuidadosa que del mismo hemos hecho nos convence de que en los autos hay suficiente prueba para sostener la sentencia dictada.

*Debe confirmarse la sentencia apelada.*