EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TRINIDAD VERDEJO MELÉNDEZ, acusado y apelante.

*Números:* CR-62-14, CR-62-15      *Resueltos:* 26 de abril de 1963

210

A. *Viera Martínez*, abogado del apelante; *J. B. Fernández Ba-dillo, Procurador General*, y *Américo Serra, Procurador General Auxiliar*, abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

1. El apelante, un Agente de Rentas Internas del Departamento de Hacienda, fue acusado de soborno. Negó los hechos que se le imputaron y adujo además como defensa que fue inducido a cometerlos por un agente encubierto de la Unidad de Investigaciones del Departamento de Hacienda.[1] En *Pueblo* v. *Pérez*, 72 D.P.R. 865 (1951), resolvimos que la defensa de *"entrapment"* es afirmativa y que "al ser invocada admite que el acto imputado al acusado como constitutivo de delito público fue por él cometido". Ver además: *State* v. *Good*, 165 N.E.2d 28 (Ohio 1960); *State* v. *O'Donnel*, 354 P.2d 1105 (Mont. 1960); *State* v. *McIntosh*, 333 S.W.2d 51 (Mo. 1960); *People* v. *Jones*, 17 Cal. Rep. 256 (1961); *People* v. *Polsalski*, 5 Cal. Rep. 762 (1960); *People* v. *Lollis*, 2 Cal. Rep. 420 (1960); Anotación, *Availability of Defense of Entrapment Where Accused Denies Participating at all in Offense*, 61 A.L.R.2d 677 (1958). Habiendo el acu-

---

[1] Ver pág. 109, T. de E. 2da. pieza.

sado negado los hechos que se le imputaron, no procedía la defensa de *"entrapment"*. Pero es que, aun si consideráramos que procede la defensa en situación en que el acusado niega los hechos, tampoco las circunstancias presentes en el caso de autos la justifican. No surge de la evidencia que el acusado fuera inducido a aceptar el soborno por las actuaciones del agente encubierto. *Pueblo* v. *Pérez*, supra. Como dijimos en *Pueblo* v. *Seda*, 82 D.P.R. 719 (1961); 299 F.2d 576 (1st Cir. 1961); cert. denegado 370 U.S. 904 (1962) "Todo cuanto se requiere es que la actuación del agente no incite o induzca la intención criminal en la mente del acusado, aunque facilite la comisión del delito". El acusado claramente mostró su inclinación a cometer el delito al aceptar dinero prontamente de personas que él conocía traficaban en ron clandestino. No puede en forma alguna sostenerse que fuera el agente encubierto el que sembrara en la mente del acusado la idea de aceptar el soborno. La semilla estaba lista a brotar. El agente encubierto no tuvo que realizar esfuerzo alguno para convencer al acusado que aceptara el dinero con el propósito de que éste le informara cuándo se iban a llevar a cabo las redadas, o para que cuando lo viera con cargamentos de ron, le diera "la luz verde". El agente le dio dinero y el acusado lo aceptó.

En *State* v. *Pacheco*, 369 P.2d 494 (Utah 1962) se expone concisamente la defensa de *"entrapment"* así:

"El que un funcionario del orden público cause que una persona cometa un delito, que de lo contrario no hubiera cometido, con el propósito de aprehenderlo y procesarlo, constituye entrampamiento. Esto es tan contrario a la verdadera tarea de estos funcionarios, la prevención, no la creación, del delito, y tan repugnante a los conceptos fundamentales de justicia que la condena de un acusado bajo tales circunstancias no será sostenida. Cuando surge tal controversia, la cuestión a dilucidarse es si el delito es el producto de la intención y el deseo criminal del acusado o si es el producto de la incitación o el estímulo ofrecido por el funcionario. Si el delito fue, de hecho, instigado o inducido por las actuaciones del funcionario, hasta el punto que la conducta de este último fue la causa principal que produjo el delito, y sin

la cual éste no hubiera sido cometido, el acusado no debe ser condenado. Por el contrario, si el estado mental del acusado era tal que deseaba e intentaba cometer el delito, el mero hecho de que un funcionario u otra persona le ofreciera una oportunidad para cometerlo no constituiría entrampamiento; y esto no sería menos cierto aunque un agente encubierto acompañara al acusado en su plan delictivo y le ayudara o estimulara en él."

Ver además: *Sherman* v. *United States*, 356 U.S. 369 (1958); *Sorells* v. *United States*, 287 U.S. 435 (1932); *Carson* v. *United States*, 310 F.2d 558 (9th Cir. 1962); *Hansford* v. *United States*, 303 F.2d 219 (D.C. Cir. 1962); *United States* v. *Becker*, 62 F.2d 1007 (2d Cir. 1933); *People* v. *Toler*, 185 N.E.2d 874 (Ill. 1962); *Riddle* v. *State*, 374 P.2d 634 (Okl. 1962); Nota, *Entrapment*, 73 Harv. L. Rev. 1333 (1960); Mikell, *The Doctrine of Entrapment in the Federal Courts*, 90 U. Pa. L. Rev. 245 (1942); Donnelley, *Judicial Control of Informants*, 60 Yale L.J. 1091 (1951); Comentarios, 6 Buffalo L. Rev. 348 (1957); Williams, *Entrapment A Legal Limitation on Police Techniques*, 40 J. Crim. L., C. & P.S. 343 (1957); Anotación, *Entrapment to Commit Bribery or Offer to Bribe*, 69 A.L.R.2d 1397 (1960).

2. Originalmente contra el acusado se radicaron dos acusaciones. En una se le imputaba que había recibido soborno de José M. Díaz Alamo, un agente encubierto que pasaba como traficante en ron clandestino y de Purificación Pérez, un traficante en ron clandestino y en drogas. En la otra se le imputaba haber recibido soborno del mencionado Pérez.

■ El acusado solicitó que se le particularizaran las fechas en que había recibido el soborno en ambas acusaciones. El fiscal radicó acusación enmendada eliminando de la primera lo referente a Purificación Pérez. Cumpliendo con la solicitud de particulares expresó las fechas en que el acusado recibió el soborno. Según la especificación suministrada por el fiscal, una de las fechas en la primera acusación, el 31 de mayo de 1957, es la misma fecha en que, se alega en la segunda acusación, recibió soborno de Purificación Pérez.

Basándose en esto y en el hecho de que Pérez declaró que el 31 de mayo el dinero que le entregó al acusado fue el que le dio Díaz Alamo, el acusado sostiene que debió archivarse la segunda acusación. No procedía el archivo, pues Pérez declaró que cuando el acusado le exigió su parte le contestó "Recuerda que los cinco míos yo te los había dado ya la semana pasada". Había ocurrido pues el soborno en otras ocasiones por parte de Pérez. Ver *Pueblo* v. *Méndez*, 67 D.P.R. 829 (1947) (En reconsideración); *Pueblo* v. *Serrano*, 66 D.P.R. 454 (1946); *Pueblo* v. *Díaz*, 61 D.P.R. 696 (1943).

3. El apelante sostiene que la actuación de Díaz Alamo, Pérez y la de él constituyen una conspiración en la cual los dos primeros son cómplices y como tales, se requiere la corroboración de sus testimonios.

En *Forastieri* v. *Calzada, Alcaide*, 53 D.P.R. 251 (1938) resolvimos que "siendo el dar y el recibir un soborno delitos separados y distintos el que lo ofrece y el que lo acepta no son cómplices entre sí a los efectos de la regla que requiere la corroboración de la declaración de un cómplice." *Pueblo* v. *Adorno*, 81 D.P.R. 518 (1959); *In re Abella*, 67 D.P.R. 229, 239 (1947). Ver además: *Pueblo* v. *Seda*, supra.

4. El acusado sostiene, en lo que a la acusación radicada por recibir soborno de Díaz Alamo respecta, que el tribunal de instancia debió haber ordenado la absolución del acusado por el fundamento de que siendo el mencionado Díaz Alamo un agente encubierto "el acusado nunca lo hubiera podido arrestar ni denunciar [ya que el mencionado agente] no se dedicaba a traficar en ron ni en drogas ni en nada ilegal. El acusado tampoco había de tener nada sometido a su voto, opinión, decisión, o determinación de Díaz Alamo con respecto a lo cual un alegado soborno lo hubiera influenciado porque Díaz Alamo no es un violador de la ley".

En *Pueblo* v. *Seda*, supra, al rechazar una contención similar en relación con el juego de bolita manifestamos: "Al rechazar tal alegación, el tribunal indicó que aunque era

cierto que el propósito del agente era exclusivamente obtener evidencia y no colocar una apuesta, esta intención—desconocida por el acusado—no le impidió aceptar la jugada. No es necesario que ambas personas tengan una intención criminal, y basta con que la persona que acepta la apuesta tenga tal intención, expresa o implícita".

5. Apunta el acusado como error la admisión de unas fotografías. El apelante sostiene que cometió error el tribunal de instancia "al permitir que el testigo Díaz Alamo explicando el contenido de [las fotografías] dijera cosas sustanciales que no aparecen de dichas fotografías". Las manifestaciones a que se refiere el apelante son las siguientes:

"En la primera fotografía, ésta es la fotografía mientras yo estoy llegando a la casa de Trinidad Verdejo; aquí estoy tocando a la puerta y nadie contesta", pág. 391 T. de E. 2da. pieza. . . . "En la segunda fotografía estoy mirando por un cristal que hay en la puerta, un pequeño cristal que hay en la puerta; estoy mirand [sic] a ver si hay alguien adentro; ya había tocado y no habían respondido". . . . "En la tercera fotografía estoy sentado en el balcón de la casa en espera de que llegue el agente Trinidad Verdejo", pág. 393, T. de E. 2da. pieza . . . "En la próxima fotografía está Trinidad Verdejo; en estos momentos es cuando yo saco la paca de billetes, los billetes que tenía en los bolsillos; estoy haciendo aguaje para sacar uno, un billete de cinco que yo siempre sacaba. En la última fotografía del día once es cuando Trinidad Verdejo está marcando él un cuadro en el programa de caballos", T. de E. pág. 395, 2da. pieza. . . . "Estas fotografías se refieren al diecinueve de abril de mil novecientos cincuentiseis. Ese día, como los días en que iba anteriores, fui a la casa, toqué en la puerta y nadie salió. La segunda fotografía es, en esos momentos había llegado la señora del agente Trinidad Verdejo; Trinidad Verdejo es este con la gorrita negra ahí vestido de blanco; este que está aquí soy yo", T. de E. pág. 397. . . . "Ese día ella abrió la puerta y entró adentro, en esa fotografía. Después de esa fotografía, en la tercera fotografía aquí que aparece, es cuando llega un muchacho con una caja en la cual yo digo tenía, la caja, las letras 'osterizer'. Llegó la caja, la señora aquí sale a recibirla; yo estoy aquí parado aparte;

la señora salió a coger la caja, entonces el muchacho le dio un papel para que ella lo firmara. No sé de qué era el papel, sé que la caja decía 'osterizer'. No sé lo que contenía la caja tampoco. En esta fotografía es cuando llega el agente Trinidad Verdejo; éste que está aquí de camisa negra con la gorrita; éste aquí parado soy yo; la puerta está abierta; nos saludamos . . . En esta fotografía es cuando ya yo le he entregado el dinero al agente Trinidad Verdejo, y aquí . . . En esta fotografía ya yo le había entregado el dinero a Verdejo; aquí se ve la mano cuando él está, va a meter el dinero al bolsillo . . . Un billete de cinco dólares. En la última fotografía de este 'set' es ya cuando ya yo me había despedido de Trinidad Verdejo y voy rumbo a la calle para bajar la escalera, y él está parado aquí", págs. 398, 399, 400 y 401.

■ Examinadas las fotografías así como las declaraciones de Díaz Alamo no creemos que las mismas hayan resultado perjudiciales al acusado. Las manifestaciones transcritas van encaminadas a explicar las fotografías. El uso de este procedimiento ha sido sancionado pues ayuda al juzgador a entender mejor la prueba fotográfica ofrecida. 3 Wigmore, *On Evidence*, 3ra. ed., secs. 792 y 793.

■ 6. Al presentarse en evidencia por el fiscal el nombramiento del acusado como Agente de Rentas Internas el juez, al admitirlo, manifestó:

"Se admite y se marca exhibit uno. Se le instruye en estos momentos al jurado que esta prueba ha sido ofrecida y que ustedes la considerarán conjuntamente con la otra prueba testifical que se presente y la demás prueba objetiva que se presente, si es que se presenta alguna, *para resolver sobre la inocencia o culpabilidad del acusado.*" (Énfasis suplido.)

El acusado tomó excepción por entender que las manifestaciones transcritas le perjudicaban. Alega que "la prueba que se presente no es, como dijo el Tribunal Sentenciador para resolver sobre su inocencia o culpabilidad. La inocencia no hay que probarla porque por disposición constitucional en Puerto Rico, al acusado se le presume inocente".

Las palabras del juez que presidió la vista no tienen el alcance que el acusado les da. El juez explicó que lo hacía para que el jurado no se confundiera. Manifestó que si se hubiera limitado a decirle al jurado que la prueba que se presentaría era para que ellos resolvieran sobre la culpabilidad del acusado, "el jurado podía entender eso como un pensamiento del tribunal sobre la posible culpabilidad del acusado". El juez además manifestó claramente que la inocencia no había que probarla, y los instruyó debidamente sobre la presunción de inocencia y sobre la duda razonable.

7. Al agente encubierto Díaz Alamo, cuando declaraba durante el juicio, se le preguntó por qué él había ido a casa del acusado y qué le había inducido a él a investigar las actuaciones de este agente. Contestó que en cierta ocasión, estando el acusado presente, oyó cuando una persona manifestó que le iba a informar al agente Pérez Pimentel quien era la persona que había agredido al agente Rojas Lugo y que no se lo informaba a Trinidad Verdejo porque éste "sólo baja a La Colectora a buscar dinero".

La defensa objetó la admisión de esas manifestaciones porque constituían prueba de referencia.

La manifestación que se objeta tenía el propósito de establecer la razón que tuvo el agente encubierto Díaz Alamo para acercarse a Trinidad Verdejo; para tratar de determinar si era cierto lo que había oído. "Igualmente, prueba acerca de la razón por la cual se actúa es admisible como excepción a la regla sobre prueba de referencia. La veracidad del comentario de la tercera persona es inmaterial; el hecho de que se hizo es lo importante". *Commonwealth* v. *Tselepis*, 181 A.2d 710 (Penn. 1962); 6 Wigmore, *Evidence*, sec. 1766 (1940).

Además el acusado estaba presente cuando fue hecha la manifestación originalmente. Con respecto a él la manifestación ha perdido el carácter de prueba de referencia. *Pueblo*

v. *Marrero*, 41 D.P.R. 951 (1931) y *Pueblo* v. *Millán*, 35 D.P.R. 889 (1926).

■ 8. Apunta como error el apelante el que la corte no le permitió sentar las bases para impugnar al testigo de cargo Pérez. Pretendía hacerlo estableciendo que había sido convicto por violaciones a la ley de bolita, por mantener casas de lenocinio y por otros delitos menos graves. La corte sólo permitió hacerlo en cuanto a leyes de bebidas y drogas. La defensa sostiene que tenía derecho a impugnar a este testigo a base de todas las violaciones de ley (*felony* o *misdemeanor*), a todos sus arrestos y a toda su vida, porque el Ministerio Público en su teoría puso en *"issue"* toda la vida de Purificación Pérez al decir que éste "era un habitual violador de las leyes de rentas internas".

La Ley de Evidencia—32 L.P.R.A. sec. 2150—dispone que un testigo no podrá ser tachado "con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo o la anotación de la sentencia que fue convicto de delito grave".

Las violaciones a que aludía la defensa no constituían delitos graves. No erró la corte sentenciadora pues la impugnación que se pretendía hacer no era permisible. Ahora bien, el fiscal, al hacer las manifestaciones que cita el apelante al efecto de que el testigo Pérez "era un habitual violador de las leyes de rentas internas", ayudó al acusado al dejar establecido ante el jurado que el mencionado testigo era un violador consuetudinario de la ley. El jurado tenía conocimiento de la clase de persona que era Pérez.

■ 9. La defensa solicitó durante el juicio que se le facilitara unos informes que había rendido Díaz Alamo. El propósito era impugnar la declaración de éste en el sentido de que al referirse al acusado mientras declaraba lo hacía distinto a como se refería a él en estos informes. El fiscal interrogó a Díaz Alamo en relación con esto y a esos efectos los ofreció en evidencia. La defensa objetó su admisión por

contener dichos informes prueba de referencia perjudicial al acusado. La corte los admitió e instruyó al jurado que los admitía "exclusivamente a los efectos de determinar sobre la impugnación del testigo pero que nada de lo consignado del contenido del documento podrá ser prueba directa presentada contra el acusado y sí exclusivamente para ustedes determinar si ha habido alguna contradicción en la declaración del testigo a los efectos exclusivamente de su impugnación".

El tribunal pues aclaró el propósito del documento.

10. Por último el acusado sostiene que "[C]onstituye error el que el Fiscal en su informe comentara el silencio del acusado y además usara contra éste lenguaje impropio levantando prejuicio y afectando el derecho a un juicio imparcial y justo; no siendo las instrucciones del Tribunal suficientes para borrar de las mentes del jurado el efecto que tuvieron las expresiones del Fiscal."

■ Mientras rendía su informe, el fiscal manifestó lo siguiente: "Conteste el acusado, si es que puede, qué razones tiene Puro Pérez para ser enemigo suyo".

Para determinar cualquier posible efecto de dicha manifestación, ésta debe ser vista a la luz de lo sucedido en el caso. Y vista de ese modo resulta clara su relación con lo manifestado por la defensa, al exponer su teoría, en el sentido de que Pérez era "un enemigo acérrimo de los agentes de Rentas Internas".

Es nuestro parecer que el comentario impugnado por la defensa no constituyó un comentario al silencio del acusado. Se trataba meramente de una invitación que hacía el fiscal, seguro de haber probado la relación entre Pérez y el acusado a la defensa, para que sostuviera, con vista a la prueba desfilada, su aseveración anterior relativa a Pérez.(2)

---

(2) Que esto es así lo demuestran las siguientes manifestaciones del fiscal Rodríguez y el fiscal Freyre respectivamente:

"Yo reto al compañero de la defensa a que explique a ustedes,

Sin embargo, aun si se considerara, como lo hizo el juez de instancia, que dicha manifestación constituía un comentario al silencio del acusado, la instrucción ofrecida por el juez inmediatamente después es suficiente para subsanar el posible error. Instruyó así el juez al jurado:

"HON. JUEZ RIVERA:

Sí. Parece que se está comentando el silencio del acusado y que conteste por qué Puro Pérez es enemigo suyo. En esas circunstancias, da la impresión al Jurado de que el acusado estaba obligado a sentarse a declarar eso. Esas manifestaciones no deben hacerse. Se ordena la eliminación de esa parte, donde el Fiscal informa que el acusado conteste eso, sobre su enemistad con Purificación Pérez. Señoras y caballeros del jurado, pido que lo eliminen de la mente de ustedes y no lo tomen en consideración. El acusado no está obligado a sentarse a declarar. Si se sienta, debe decir esto o lo otro. Pero, si no se sienta, su silencio no debe tomarse en consideración para nada en relación con el caso. El Fiscal tiene la obligación de probar su caso más allá de duda razonable, sin que el acusado tenga que declarar. Por eso no se le puede pedir que conteste." (T. de E. 2da. pieza págs. 329–330) Véase además T. de E. 2da. pieza pág. 383.

En *Pueblo* v. *Díaz*, 69 D.P.R. 621 (1949) dijo este Tribunal, a la página 625:

"Somos de opinión que el error señalado quedó subsanado por las instrucciones específicas dadas inmediatamente al jurado por el juez del tribunal inferior, a solicitud de la defensa; y que con ellas, y además con las amplias instrucciones generales del propio juez sobre el derecho del acusado de abstenerse de decla-

---

en su turno, las razones que pudo tener para haber dicho, en su teoría, tal cosa."

. . . . . . . .

"El Fiscal lo que hace ahora es rebatiendo un ofrecimiento de prueba que se hizo aquí. Que se iba a probar que Puro Pérez era enemigo de los agentes de Rentas Internas. Y el compañero pide ahora a la defensa que explique dónde está ese elemento de prueba de que Purificación Pérez era enemigo de los agentes de Rentas Internas."

rar, el posible perjuicio al acusado por el comentario del fiscal quedó desvanecido. (citas) Al así resolverlo, adoptamos, por considerarla la más correcta en principio, la regla que prevalece en la mayoría de las jurisdicciones de los Estados Unidos de que el error cometido al comentar el fiscal el silencio del acusado queda curado si oportunamente el juez recrimina las palabras del fiscal e instruye específicamente al jurado sobre el derecho del acusado a no ocupar la silla testifical."

En cuanto a la manifestación hecha por el fiscal en su informe, "Maldito mil veces Trinidad Verdejo", al objetar la defensa esa expresión el juez instruyó al jurado:

"HON. JUEZ RIVERA:
Con lugar la objeción. La Corte entiende que ese lenguaje no debe usarse con ningún acusado. Pido al Fiscal que no repita esa frase y al Jurado que elimine de la mente la frase: 'Maldito mil veces Trinidad Verdejo', por entender que no debe hacerse eso con ningún acusado. Que elimine de su mente la frase del Fiscal de 'maldito mil veces el acusado Verdejo'. Adelante."

*No se cometieron los errores apuntados. Procede que se confirme la sentencia apelada.*