724

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ELÍ PERALES FIGUEROA, acusado y apelante.

Número: CR-64-477          Resuelto: 13 de octubre de 1965

*Francisco Coll Moya,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El fiscal acusó a Elí Perales Figueroa de una infracción al Art. 260 del Código Penal, atribuyéndole la comisión intencional en el día 13 de agosto de 1962 de cierto acto de lascivia con una niña de doce años de edad. El juicio fue celebrado el 8 de mayo de 1963 ante un jurado. La prueba de El Pueblo consistió en los testimonios orales de esa niña y de su señora madre. La defensa no ofreció prueba alguna;

el acusado se abstuvo de declarar y así, por su parte, sometió el caso. El Jurado lo declaró culpable del delito que se le imputó.

En apelación sostiene, entre otros errores señalados, que el tribunal de instancia erró al permitir al fiscal comentar el silencio del acusado.

Al anunciar el fiscal haber terminado la presentación de su prueba, la defensa sometió el caso manifestando "Nosotros dijimos que ése es nuestro caso. No tenemos ninguna prueba."

Durante el informe de refutación al jurado ocurrió lo siguiente:

"Fiscal:

"¿Que puede hacer el acusado? Pues miren hay una prueba de coartada

.        .        .        .        .        .        .        .        .

"Defensa:

"Objeción. El Fiscal no puede manifestarse en ese sentido.

"Fiscal:

"Le decía a los Sres. del Jurado que entre los argumentos del abogado le dijo a Uds. y se lo repitió mucho de qué podía hacer el acusado en un caso como éste sino decir que esto no es verdad. Pues él podía hacer muchísimas cosas: si él no estaba con esa niña esa noche y no hizo aquello, pues tenía que estar en algún otro lugar y que él estaba con otra persona en otro lugar ............. Si esa niña declaró ante Uds. por algún motivo que fuera; si el papá y la mamá de ella la obligaron a venir a declarar aquí sobre estos hechos asquerosos, esa prueba la produce aquí. Si este señor no hubiera estado en aquel sitio, produce la prueba. Si eso no hubiera ocurrido así Uds. hubieran tenido esa prueba aquí."

En su alegato expone el apelante que el fiscal en sus manifestaciones al jurado "enumera una serie de cosas distintas que el acusado ha debido hacer, la distinta prueba que ha podido traer al jurado para defenderse y entonces subraya su informe enfatizando el hecho de que de no ser los hechos tal como los informa la prueba de cargo el acusado debió producir esa prueba ante el Hon. Tribunal."

Por su parte el Procurador General sostiene que (a) las manifestaciones transcritas del fiscal no constituyen un comentario del silencio del acusado, que (b) se referían a la prueba que podía producir el acusado si entendía que la prueba de cargo era falsa, (c) respondían a manifestaciones del· abogado defensor en el sentido de que lo único que podía hacer el acusado en un caso como éste era negar los hechos, y (d) que "el magistrado dio instrucciones sobre el derecho del acusado a no declarar y sobre la prohibición de tomar esa negativa a declarar como una circunstancia incriminatoria."

■ Nuestro Código de Enjuiciamiento Criminal desde su aprobación en 1902, en sus Arts. 7 y 29 (2) preceptuó que "A nadie podrá obligarse a declarar en contra suya en un proceso criminal" que "Si el acusado no declarare tal circunstancia no podrá utilizarse en su contra." La Ley Orgánica de 1917, en su Art. 2, párrafo 3, dispuso que "ninguna persona . . . será obligada en ninguna causa criminal a ser testigo contra sí misma." Nuestra Constitución de 1952 declara en el inciso 11 de su Art. II que "Nadie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra." Nuestras decisiones han protegido esos derechos fundamentales. (¹) Las enmiendas 5ta. y 14ta. de la Constitución federal y las legislaturas de cuarenta y cuatro estados de la Unión los garantizan.—*Griffin* v. *California*, 380 U.S. 609; *People* v. *Modesto*, 398 P.2d 753, 762 (Cal.).

■ El silencio del acusado por su destino—eficaz instrumento para la garantía de la presunción de inocencia y del privilegio de no incriminarse—es digno del más profundo

---

(¹) Véanse: *Pueblo* v. *Roldán et al.*, 27 D.P.R. 786, 790 (1919); *Pueblo* v. *Estrada*, 51 D.P.R. 815, 821 (1937); *Pueblo* v. *Díaz*, 69 D.P.R. 621, 629 (1949); *Pueblo* v. *Velázquez*, 72 D.P.R. 42, 50 (1951); *Pueblo* v. *Alvarez Trinidad*, 85 D.P.R. 593, 597 (1962); *Pueblo* v. *Cotto Torres*, 88 D.P.R. 23 (1963), resoluciones en reconsideraciones de 28 de junio de 1963, 88 D.P.R. 38 y 18 de diciembre de 1963, 88 D.P.R. 39 y *Pueblo* v. *Verdejo Meléndez*, 88 D.P.R. 207 (1963).

respeto; su invasión no está permitida a nadie; no se debe permitir cualquier intento de convertirlo en factor o elemento incriminatorio. Sugerir o insinuar motivaciones al silencio del acusado, o producir explicaciones en torno al mismo a base de una certeza hipotética de la prueba de cargo, susceptibles de ser finalmente interpretadas como demostración de culpabilidad, o capaces de perturbar la serenidad o ecuanimidad del jurado, equivale a su efectiva y perjudicial violación.

Las palabras del fiscal, aun cuando fueran dichas refutando manifestaciones del letrado defensor, insinuaban al jurado que el acusado había guardado silencio en juicio y no había producido prueba en su favor porque era cierto que (1) había estado con la niña esa noche, (2) que la niña había declarado voluntariamente y (3) que todo había "ocurrido así", como la niña lo declaró.

En *Pueblo* v. *Díaz*, ya citado, entre otras cosas, dijimos:

"El derecho de un acusado a no declarar y a que tal circunstancia no establezca presunción alguna en su contra no debe ser invadido por el ministerio público con comentarios adversos ni insinuaciones de clase alguna. Si lo fuera, debe recibir del juez que presida el juicio la más severa e inmediata recriminación por conducta impropia; y el jurado ser instruido por la corte inmediatamente en forma apropiada, de suerte que en el ánimo de los juzgadores de hecho no pueda quedar vestigio alguno de tales comentarios vertidos ante ellos."

En el caso de autos el tribunal apelado no dio prontamente las instrucciones específicas al jurado sobre el derecho del acusado a no ocupar la silla testifical y a no producir evidencia alguna a su favor; no se produjo en ese momento ni en cualquier otro durante el juicio "las más severa e inmediata recriminación por la conducta impropia" del fiscal que actuaba en el caso. Aparentemente consideró lícitas o no perjudiciales esas expresiones. Se limitó en sus instrucciones generales a trasmitir la instrucción de rutina sobre lo que "la ley establece" en cuanto al derecho del acusado de declarar o no declarar que en nada subsanaron el error cometido.

En *Pueblo* v. *Velázquez*, que también hemos citado, refiriéndonos al de *Pueblo* v. *Díaz* nos expresamos así:

"En dicho caso, habiendo la corte actuado prontamente y trasmitido al jurado instrucciones específicas, ampliadas luego por las instrucciones generales, resolvimos que el error imputado había quedado subsanado.

"No podemos llegar a la misma conclusión en el presente. No sólo la corte dejó de censurar las palabras del fiscal y de dar instrucciones al jurado prontamente para que no las tomaran en consideración y en esa forma subsanar el error, sino que éste tampoco fue subsanado en las instrucciones generales, ya que la corte justificó dichas palabras como un argumento lícito del fiscal, que si bien no constituía prueba, trataba de esclarecer la verdad como él mejor creía y además, erró al sostener que el comentario del fiscal no se refería al silencio del acusado."

En el citado caso de *Griffin* v. *California* se declaró inconstitucional la Sec. 13 del Art. I de la Constitución del Estado de California que permitía al juez y al fiscal comentar adversamente el silencio del acusado y que el jurado lo tomara en cuenta en sus deliberaciones. Dice el resumen de la opinión:

"Comentarios al jurado hechos por el fiscal en el juicio de una causa criminal fundados en haber dejado de declarar el acusado respecto a materias que razonablemente se esperaba que él pudiera negar o explicar por conocerlas o comentarios hechos por la corte en el sentido de que el silencio del acusado bajo esas circunstancias probaban su culpabilidad violan la cláusula contra la autoincriminación de la enmienda quinta de la Constitución federal tal como se hace aplicable a los estados por la enmienda catorce."

Por los fundamentos expuestos concluimos que fue cometido ese error. Por la disposición que haremos respecto al caso se hace innecesario la discusión de los demás errores señalados, los cuales, de haberse cometido, no hubieran dado motivo para absolverse al acusado apelante. (²)

---

(²) Para otro caso más apropiado dejaremos la resolución de la cuestión de si el error incurrido al comentarse adversamente el silencio del acusado es o no es subsanable por medio de severa reprimenda al fiscal e instrucciones específicas dadas prontamente al jurado, es decir, si debe restaurarse la doctrina de *El Pueblo* v. *Roldán et al.*, antes citado.

*Debe revocarse la sentencia apelada y devolverse el caso para la celebración de un nuevo juicio.*

El Juez Asociado Señor Pérez Pimentel disintió. El Juez Asociado Señor Ramírez Bages disintió en opinión separada con la cual concurre el Juez Asociado Señor Blanco Lugo, quien también disintió.

—O—

Opinión disidente del Juez Asociado Señor Ramírez Bages en la cual concurre el Juez Asociado Señor Blanco Lugo

San Juan, Puerto Rico, a 13 de octubre de 1965

Por no estar conforme con los términos de la opinión dictada en este caso por el hermano Juez Hernández Matos, me veo obligado a disentir por las razones que expongo a continuación.

El fiscal hizo referencia a la ausencia de la prueba de coartada o de una explicación del motivo por el cual declaró la niña o sobre el hecho de si sus padres la obligaron a declarar. En otras palabras, las manifestaciones del fiscal podían razonablemente referirse al hecho de que el acusado dejó de ofrecer otro testimonio de otros testigos y no a que él no testificó. Como los hechos aludidos podían establecerse por prueba de otros testigos no surge razonable y necesariamente que se estaba haciendo referencia al silencio del acusado. A mi juicio, el comentario en cuestión no viola la garantía constitucional pues no hizo referencia directa al silencio del acusado. Ni puede considerarse como referencia indirecta del referido silencio ya que su alcance se limita a señalar las defensas que el acusado pudo haber aducido y las mismas eran susceptibles de probarse por el testimonio de otros testigos. En *Pueblo* v. *Cotto Torres*, 88 D.P.R. 23 (1963), dijimos que la manifestación del fiscal al oponerse al testimonio de un testigo—que iba a testificar sobre lo que el acusado dijo— por razón de que "el acusado está aquí para decirlo, si quiere decirlo", no constituye un comentario sobre el silencio del

Acusado pues "no se expresó directamente, ni puede inferirse de tal comentario que se hacía alusión al silencio del acusado".

En *United States* v. *Wright*, 309 F.2d 735 (7th Cir. 1962), se sostuvo la declaración del fiscal al jurado de que "ustedes han oído la prueba desde la silla de los testigos bajo juramento y en cuanto al acusado Wright no ha sido refutada ni negada. De ciento setenta millones de gente en Estado Unidos ni un testigo tomó la silla para refutar el caso del gobierno. Ni de Nueva York ni de ningún otro sitio vinieron." Dijo el tribunal al sostener esta declaración:

"La Corte Suprema ha resuelto que la 5ta. enmienda y la ley, 18 U.S.C. sec. 3481, prohibe cualquier comentario o argumento sobre el silencio del acusado. Esta regla, sin embargo, debe interpretarse a la luz de la razón y debe aparecer que el lenguaje fue usado con la intención manifiesta de, o era de tal naturaleza que, el jurado natural y necesariamente lo considerase como un comentario sobre el silencio del acusado . . . Estamos de acuerdo con lo dicho en *Langford* . . . ."

En *Langford* v. *U.S.*, 178 F.2d 48 (9th Cir. 1949), el fiscal en su informe al jurado dijo: "Creo que es significativo que el acusado no testificara y no trajera testigos para impugnar el testimonio de Miss Jones y de Mr. Bryant." El tribunal sostuvo esta declaración, dictaminando al efecto que:

"El comentario prohibido es uno que probablemente sugiere que el jurado derive inferencias adversas del hecho de que el acusado dejó de testificar. La sustancia del comentario hecho aquí era que el testimonio de Miss Jones y de Mr. Bryant no fue desvirtuado. Es cierto que el fiscal antepuso a esto que el acusado no se sentó en la silla de los testigos, hecho que el jurado, por supuesto, conocía. Pero no creemos que el informe considerado en su totalidad, aumentó la posibilidad de que el jurado derivase inferencias del hecho de que el acusado no testificó. Y, excepto en los casos especiales donde aparece que el propio acusado era el único que podía contradecir el testimonio del gobierno. *Linden* v. *U.S.*, 296 F. 104 (CA 3, 1924), el fiscal puede llamar la atención a que el testimonio de los testigos del gobierno no ha sido contradicho."

El dictamen de *Langford,* supra, así como el de *Wright,* supra, se sostuvieron más recientemente en *Sterling* v. *U.S.,* 333 F.2d 443 (9th Cir. 1964), *certiorari* denegado en 379 U.S. 933. Las expresiones del fiscal sostenidas como no impropias fueron al efecto de que:

"En este caso la defensa no ha presentado prueba para controvertir la evidencia circunstancial, obvia, de la intención . . . . No hubo prueba ofrecida por la defensa demostrativa de que éste era su whiskey. No hubo prueba ofrecida por la defensa de que esto era un error."

Dictaminó el tribunal que había mérito en la afirmación del fiscal, sosteniendo que esta declaración no era impropia, de que los apelantes no eran las únicas personas que se pudieron presentar como testigos para establecer su falta de intención. *U.S.* v. *Borda,* 285 F.2d 405 (4th Cir. 1961), *certiorari* denegado en 365 U.S. 844.

En *State* v. *Maxwell,* 376 S.W.2d 170 (Mo. 1964), se sostuvo como correcto que el fiscal preguntara, en su informe al jurado "¿Ofreció el acusado algún testimonio de que estaba en algún otro sitio cuando ocurrieron los hechos?" *State* v. *Hayzlett,* 265 S.W.2d 321 (Mo. 1954); *Alford* v. *State,* 255 S.W.2d 519 (Tex. 1953); *Francis* v. *Commonwealth,* 224 S.W.2d 163 (Ky. 1949); *Cascio* v. *State,* 210 S.W.2d 897 (Ark. 1948).

El caso de *Griffin* v. *California,* 380 U.S. 609 (1965), en que mayormente descansa la opinión mayoritaria tampoco está en pugna con nuestra conclusión pues los comentarios del fiscal en este caso hacían referencia *directa* al silencio del acusado. No podía haber duda en esto pues al final del comentario el fiscal añadió: "El [acusado] no ha tenido a bien sentarse a negar o explicar estas cosas."

Aun suponiendo que los comentarios del fiscal fueran considerados una referencia impropia al silencio del acusado, no constituyeron una violación de la garantía constitucional pues fueron inducidos y provocados por la propia defensa

al inquirir a su vez luego de informar que no tenía otra prueba, "¿qué podía hacer el acusado en un caso como éste sino decir que esto no es la verdad?" La Regla establecida es que la referida garantía se convierte en inoperante cuando la defensa induce y provoca el comentario del fiscal o "resulta clara su relación con lo manifestado por la defensa." *Pueblo* v. *Verdejo Meléndez*, 88 D.P.R. 207 (1963). *Comment on Defendant's Failure to Testify*, 4 Hastings L.J. 63, 66 (1952–53). Cf. *Pueblo* v. *Estrada*, 51 D.P.R. 815, 820, 821 (1937). Así, en *Baker* v. *U.S.*, 115 F.2d 533 (8th Cir. 1940), *certiorari* denegado en 312 U.S. 692, en que el acusado no testificó, su abogado informó al jurado que "este hombre Bunker había testificado que Norman Baker [el acusado] había dicho . . . que él iba a robar un millón de dólares a los tontos de América. No sé que opinión formarán ustedes de Bunker . . . . Creo que las letras e–r deben eliminarse de su nombre y debiera llamarse puro Bunk" (queriendo decir charlatán). A esto contestó el fiscal que "Si Bunker era un Bunk por qué no lo probaron. Pero permanecieron en silencio como los muertos y en silencio como una tumba hasta que vinieron a informar y entonces quieren impugnar al individuo." Dijo el tribunal: "En esa forma surge que el abogado de la defensa provocó el comentario del ayudante fiscal al atacar la veracidad y credibilidad de Bunker. El abogado puede ofrecer cualquier argumento basado en la prueba o inferencias razonables de la misma y *puede contestar el argumento de la parte contraria, y al hacerlo puede hacer manifestaciones que en otras circunstancias serían impropias.*" (Énfasis nuestro.) *Malone* v. *U.S.*, 94 F.2d 281 (7th Cir. 1938). Una contestación justa al argumento del abogado de la defensa no viola ni la constitución ni el estatuto. *Comeriato* v. *U.S.*, 58 F.2d 557 (4th Cir. 1963); *Rice* v. *U.S.*, 35 F.2d 689 (2d Cir. 1929); *Kearns* v. *U.S.*, 27 F.2d 854 (9th Cir. 1928); *People* v. *McElroy*, 196 N.E.2d 651 (Ill. 1964); *People* v. *Hynes*, 187 N.E.2d 252 (Ill. 1963); *Freeman* v. *State*, 216 S.W.2d 864

(Ark. 1949) ; *Pedigo* v. *Texas*, 160 S.W.2d 963 (Tex. 1942) ; *Teague* v. *State*, 52 P.2d 91 (Okl. 1935).

*Por las razones expuestas, concluyo que el referido comentario del fiscal no constituyó una violación de la garantía constitucional de que no se comente sobre el silencio del acusado y por lo tanto debe confirmarse la sentencia apelada.*