EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ VÉLEZ TORRES, acusado y apelante.

*Número:* CR-69-18 *Resuelto:* 21 de octubre de 1969

6

*Carlos Roberto Vélez*, abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino*, y *Lydia Nieves Franqui, Procuradora General Auxiliar*, abogados de El Pueblo.

PER CURIAM: Convicto de la venta de heroína, José Vélez Torres apunta en apelación la comisión de varios errores por el tribunal de instancia a virtud de la cual solicita la revocación de la sentencia que lo condenó a la pena de cinco a diez años de prisión. No tiene razón.

1.—Alega el apelante que el tribunal de instancia incidió al negarse a ordenar al fiscal a traer al acto del juicio al confidente William García. El récord demuestra, contrario a lo alegado por la defensa, que ésta no solicitó del tribunal la citación del confidente a pesar de que el fiscal le ofreció cualquier información para localizarlo. Además, como en *Pueblo* v. *López Rivera*, 91 D.P.R. 693 (1965), en el momento de la transacción estuvo presente el agente López Torres quien testificó como testigo de cargo y fue contrainterrogado extensamente. De manera que la citación del confidente no resultaba indispensable para la defensa del acusado. *Cf. Pueblo* v. *Flores Berty*, 92 D.P.R. 577 (1965).

2.—El apelante arguye que debió concederse su solicitud de nuevo juicio basada en (1) la negativa del tribunal de permitir que se trajera a testificar al confidente, (2) unas instrucciones erróneas y (3) la publicidad de un proceso en la Corte de Distrito de los Estados Unidos para Puerto Rico en el cual el agente encubierto, que fue testigo de cargo, fue objeto de un atentado a su vida.

En el párrafo anterior dispusimos de la cuestión relacionada con el confidente. El apelante no ha señalado qué instrucciones considera erróneas. Del récord aparece que al terminar de dar sus instrucciones el tribunal de instancia, la defensa las impugnó porque el tribunal señaló específica-

mente al jurado el hecho de que el apelante se dirigió con López y García a la Calle Bolívar con el propósito de hacer una transacción de droga y les dijo que si creían fuera de toda duda que el apelante llevó al agente López a casa de Estrada Molinari para facilitar la venta de heroína, esa prueba justificaba un veredicto de culpabilidad ya que de acuerdo con el Art. 21 del Código Penal el que ayuda a o instiga la comisión de un delito es un principal o autor del delito. Alegó, además, que la prueba de cargo no fue corroborada como lo requieren los casos de *Zaragoza* y *Ayala*. A nuestro juicio carecen de mérito estos apuntamientos.

Del récord no aparece que el apelante levantase la cuestión de la alegada publicidad durante el proceso ni surge en qué forma ésta influyó en el jurado al extremo de constituir una negación a un juicio justo e imparcial que ameritase la concesión de nuevo juicio.

■ 3.—Alega el apelante que el veredicto es nulo por no haberse escrito en letras el número de jurados que votó a favor de la culpabilidad del apelante y al no indicarse el artículo o disposición legal bajo el cual se le declaró culpable, limitándose el jurado a declarar al apelante "culpable de infracción a la Ley de Narcóticos."

La Regla 146 de Procedimiento Criminal dispone la forma de emitirse el veredicto. No es necesario que se haga expresión de la disposición legal por cuya violación se declara culpable al acusado. La ley tampoco requiere una forma especial para que se indique el número de miembros que concurrieron en el veredicto. En este caso, se expresó dicho número subrayando el número nueve que aparecía en la forma impresa. El tribunal *motu proprio* solicitó al presidente del jurado, en corte abierta, que escribiese el número nueve. Las partes no objetaron este procedimiento para corregir lo que a nuestro juicio es un mero error de forma. Carece de méritos este señalamiento.

La Regla 149 de Procedimiento Criminal dispone que de no poder determinarse la intención del jurado de absolver o condenar o en cuál o cuáles cargos se quiso absolver o condenar, el tribunal puede ordenar la reconsideración del veredicto. Si el jurado vuelve a rendir el mismo veredicto, éste será aceptado y el tribunal dictará un fallo absolutorio.

En el caso de autos, en las instrucciones al jurado se especificó el delito imputado al acusado. Se le entregó al jurado, además, copia de la acusación. Fue, por tanto, clara e inequívoca, la intención del jurado de declarar culpable al acusado de violación al Art. 29 de la Ley de Narcóticos.

4-5.—El apelante apunta que la prueba fue insuficiente para sostener su culpabilidad más allá de duda razonable.

No hubo incongruencia alguna entre la fecha en que ocurrieron los hechos y lo establecido por la prueba.

La omisión de alegar la fecha, según acepta el apelante, no es fatal, a menos que fuese una alegación necesaria para imputar un delito. En este caso, con antelación al juicio había sido enmendada la acusación y, además, se le había informado al acusado en un pliego de especificaciones, entre otras cosas, la fecha en que ocurrieron los hechos. De manera que en nada perjudicó al acusado la omisión en la acusación original de la fecha en que ocurrieron los hechos.

La prueba fue suficiente para sostener la convicción. El Procurador General la resume correctamente así:

"El primer testigo del fiscal, Roberto López Torres, declaró, en síntesis, lo siguiente: Para el 20 de septiembre de 1966 intervino con el acusado en cumplimiento de una misión como agente encubierto de Rentas Internas, labor que realizaba desde hacía aproximadamente cuatro años, específicamente en lo concerniente al tráfico ilegal de drogas. Conoció al acusado, José Vélez Torres como 'Junior Luquita' por medio del empleado especial William García, conocido por 'Palou', quien tenía la encomienda de relacionar al testigo con personas que se dedicaban al tráfico clandestino de drogas.

El acusado le prometió llevarlo a un individuo conocido por Tinito para que éste le facilitara media onza de heroína. Dicho individuo fue buscado por ellos en el Bar Manhattan en la parada 20 en Santurce, el día 20 de septiembre de 1966. Al no encontrarle allí, el acusado ofreció hacer el negocio con otro 'panita'. Se dirigieron en el automóvil del acusado, acompañados del empleado especial, hacia la Calle Bolívar en la parada 24. Allí el acusado le presentó a Serafín Estrada Molinari a quien le dijo que él, el testigo deseaba 'el material.' El empleado especial habló con Estrada Molinari y luego invitó al agente hacia la calle, donde le pidió $70.00 para la transacción. Entraron a la casa y allí el empleado especial le entregó los $70.00 a Estrada y éste le entregó un paquetito con veinticinco sobrecitos al empleado especial, quien inmediatamente los entregó al agente. Dichos sobrecitos fueron entregados esa misma noche por el agente a su supervisor, Luis Montañez Robles, y luego fueron objeto del análisis correspondiente, dando positivo de heroína. Estos sobres fueron presentados en evidencia, luego de haber sido identificados por el testigo.

Durante el extenso contrainterrogatorio a que fue sometido por la defensa el testigo declaró entre otras cosas, lo siguiente: Que había trabajado antes como agente encubierto, en el área dedicada a la investigación de bebidas alcohólicas y como tal había sido testigo en los tribunales de Guayama, Humacao, Caguas y Bayamón. Al llegar a la Oficina de Investigaciones Especiales del Departamento de Hacienda, su supervisor Luis Montañez Robles le entrenó en cuanto a varios aspectos específicos del tráfico de drogas y le presentó al empleado especial William García, en un cuarto localizado en la Calle Tapia en Santurce. Describió a García como 'un individuo blanco, como de 5 pies, 6 pulgadas, semi calvo, de espejuelos, como de una edad aproximadamente como de 35, 36 años. Tenía una cosa peculiar y era que casi siempre lo veía con esas chanclas que son de cuero torcidas, con correítas y usaba gafas.'

Dijo que antes del 20 de septiembre había informado alrededor de seis o siete casos en el área de Puerta de Tierra donde había sido introducido por el empleado espcial. Se reunía a veces con éste en 'El Marché Bar' o en el Bar 'Mon Bigote', en la Calle Norzagaray. En el primer sitio conoció al acusado, alrededor de dos semanas antes de la transacción la cual se efectuó

en un lugar llamado Hotel Silva. De ese lugar no tomó los detalles ya que otras personas en la división se encargaban de esos extremos.

Al ser interrogado nuevamente por el fiscal el testigo declaró que el empleado especial había sido localizado y había comparecido a declarar como testigo en un caso anterior, aunque no pudo asegurar si como testigo de cargo o de la defensa.

Las partes estipularon sobre la declaración del químico Ramón Chinea.

Luis Montañez Robles, declaró que llevaba alrededor de once años trabajando como agente especial de la Oficina de Investigaciones Especiales del Departamento de Hacienda. Dijo que el día 20 de septiembre de 1966, alrededor de la una de la tarde en un cuarto en la Calle Tapia, esquina Moncita #50, había dado instrucciones al agente López Torres para trabajar en el caso que culminó en el arresto del acusado. Esa noche, a eso de las siete de la noche, el agente le entregó en su residencia veinticinco 'decks' o sobrecitos de heroína, sobre los cuales el testigo escribió sus iniciales y la fecha, colocando los mismos en un sobre sellado con la información que le había dado el agente López y su firma. Al día siguiente entregó dicho sobre y su contenido, al químico Ramón Chinea, para el análisis correspondiente. El testigo identificó los referidos sobres.

A preguntas de la defensa dijo que conocía a William García, el empleado especial, desde aproximadamente diez años. Este recibía remuneración por sus servicios. Al acusado lo conocía desde antes que a García, tenía cierta amistad con él. No supo que el acusado se dedicara a negocios clandestinos hasta varios días antes de realizarse la transacción en que intervino el agente López, siguiendo sus órdenes.

La defensa presentó como testigo de reputación a Cecilio Gómez. Este declaró que era administrador de una agencia de la lotería y servía como jurado en el tribunal de instancia. Hacía como veinticinco o veintiséis años que conocía al acusado quien era su vecino en la Calle Sol en San Juan. El no conocía al acusado, ni tampoco la comunidad, como un traficante de drogas, sino como un hombre honesto y trabajador."

■ Aunque el agente incurrió en algunas contradicciones, las que explicó, ninguna se refiere a elementos esenciales

12

del delito. No existe justificación alguna para intervenir con la apreciación de la prueba que tuvo ante sí el juzgador. *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573 (1961); *Pueblo* v. *Avelino Cosme García*, Cr-68-15, Sentencia de 21 de octubre de 1968.

6.—Invoca el apelante la defensa de entrampamiento.

█ El apelante negó toda participación en los hechos y, por el contrario, sostuvo que el fiscal no había logrado conectarle con los mismos, excepto que estuvo presente y presenció la comisión del delito. Claramente, bajo estas circunstancias, no puede sostenerse la defensa de entrampamiento. *Pueblo* v. *Pérez*, 72 D.P.R. 865 (1951); *Pueblo* v. *Verdejo Meléndez*, 88 D.P.R. 207 (1963); *Pueblo* v. *Fernando Chico Peña*, Cr-68-64, Sentencia de 8 de mayo de 1969.

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 6 de noviembre de 1967.*

El Señor Juez Presidente y los Jueces Asociados Señores Hernández Matos y Blanco Lugo no intervinieron. Los Jueces Asociados Señores Santana Becerra y Dávila concurren en el resultado.