Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DRA. CARMEN I. FIGUEROA MEDINA<br><br>Recurrente<br><br>v.<br><br>UNIVERSIDAD DE PUERTO RICO, RECINTO UNIVERSITARIO DE MAYAGÜEZ y/o JUNTA ADMINISTRATIVA RECINTO UNIVERSITARIO DE MAYAGÜEZ<br><br>Recurrida | TA2025RA00342 | REVISIÓN JUDICIAL procedente de la Junta de Gobierno de la Universidad de Puerto Rico<br><br>Apelación Administrativa núm.: JG-23-05<br><br>Sobre: Denegación de Permanencia |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de enero de 2026.

Comparece ante este tribunal apelativo, la Dra. Carmen I. Figueroa Medina (doctora Figueroa Medina o recurrente) mediante el recurso de revisión judicial de epígrafe solicitándonos que revoquemos la determinación recurrida intitulada *Decisión de Apelación de la Junta de Gobierno (DAJG) 1 (2025-2026)* (*Decisión*) emitida por la Junta de Gobierno de la Universidad de Puerto Rico (Junta de Gobierno) el 28 de agosto de 2025, notificada el 4 de septiembre siguiente. Mediante este dictamen, la Junta de Gobierno declaró *Ha Lugar* a la *Apelación* presentada por la Junta Administrativa del Recinto Universitario de Mayagüez (JARUM o parte recurrida); y en su consecuencia, confirmó lo resuelto por esta última en la Certificación 20-21-001 del 14 de agosto de 2020 en la que se decidió no reconsiderar la apelación incoada por la recurrente. Por lo que, se mantuvo el dictamen del 24 de febrero de 2020 de la JARUM, Certificación 19-20-103, en el que se le denegó la permanencia docente a la doctora Figueroa Medina.

Por los fundamentos que expondremos a continuación, procede revocar la determinación recurrida.

**I.**

Surge del expediente apelativo que la doctora Figueroa Medina se desempeñaba como Catedrática Auxiliar del Colegio de Administración de Empresas del Recinto Universitario de Mayagüez. Esto en virtud de un nombramiento probatorio que comenzó el 1 de enero de 2015, vencedero el 1 de enero de 2020.[1]

Aproximándose los cinco (5) años del desempeño probatorio, el entonces Decano Interino del Colegio de Administración de Empresas del RUM le solicitó al ex Rector del Recinto Universitario de Mayagüez y Presidente de la JARUM, Dr. Agustín Rullán Toro, un tiempo para evaluar a la doctora Figueroa Medina para la permanencia y someter el caso ante la JARUM para la consideración y determinación correspondiente de este foro universitario.

Los miembros del Comité de Personal de la Facultad del Colegio de Administración de Empresas del Recinto Universitario de Mayagüez (CPF), emitieron el *Informe para Recomendación para Permanencia* en el que evaluaron el expediente de la doctora Figueroa Medina, a tenor con el procedimiento establecido en el *Manual de Procedimientos para Evaluación del Personal Docente contenido en la Certificación Núm. 86-87-476* de la JARUM, y analizaron sus ejecutorias durante los años 2014 al 2019, a base de todos los resultados de las evaluaciones del desempeño académico de esta.[2] Los miembros del CPF otorgaron una puntuación de 4.00 y concluyeron que la doctora Figueroa Medina había demostrado un

---

[1] En el detalle del tracto procesal administrativo utilizamos parte del relatado por la recurrente por ajustarse a lo esbozado en las *Determinaciones de Hechos* incontrovertidas incluidas en el *Informe de la Oficial Examinadora* emitido el 27 de mayo de 2025 por la Lcda. María Soledad Ramírez-Becerra y al expediente administrativo.
[2] Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC del TA, Entrada núm. 9, Anejo 4, a las págs. 9-21).

desempeño satisfactorio en las áreas académicas evaluadas, pero a su vez, señalaron varias áreas académicas en las que debía mejorar.

Así pues, el CPF recomendó que se le concediera la permanencia a la doctora Figueroa Medina. Referidas la evaluación y recomendaciones del CPF al Decano González López, este recomendó mediante comunicación al doctor Rullán Toro, como presidente de la JARUM, que se le otorgara la permanencia.

Una vez el expediente y las recomendaciones del CPF fueron remitidos a la JARUM para su evaluación, en reunión extraordinaria del 19 de diciembre de 2019, esta le solicitó al CPF información adicional para evaluar a la recurrente, la cual debía ser discutida con ella previo al caso ser atendido en el organismo. El 14 de febrero del 2020, los miembros del CPF se volvieron a reunir, revaluaron el expediente de la doctora Figueroa Medina, el resultado de sus evaluaciones durante los años del 2015 al 2020, y discutieron con esta su evaluación y recomendaciones para la permanencia.

El antedicho *Informe* fue referido a la entonces Decana Amador Dumois, quien le cursó una comunicación al doctor Rullán Toro, indicándole que no recomendaba a la recurrente para la permanencia. Mediante carta del 25 de febrero de 2020, se le informó a la doctora Figueroa Medina que la JARUM había celebrado una reunión ordinaria, el 20 de febrero anterior, en donde atendió su solicitud de permanencia docente.[3] Asimismo, se le comunicó que en dicha reunión se acordó no concederle la permanencia. En la Certificación Número 19-20-103 del 24 de febrero de 2020 que se incluyó con la misiva, la JARUM denegó la solicitud "debido a que [las] evaluaciones [de la Dra. Figueroa] en general son bajas, con tendencia a disminuir".[4] **El 16 de marzo de 2020 la recurrente**

---

[3] SUMAC TA, Entrada núm. 9, Anejo 4, a la pág. 7. En la comunicación se advirtieron los términos para solicitar reconsideración ante la JARUM y a apelar ante la Junta Universitaria.
[4] SUMAC TA, Entrada núm. 9, Anejo 4, a la pág. 8

**solicitó la reconsideración ante la JARUM** en la que expuso que no se había tomado en consideración la evaluación que llevó a cabo el CPF, ni el *Informe de Recomendación para Permanencia* que emitió dicho cuerpo el 14 de febrero de 2020.[5] Expresó, además, que las acciones del ente tienen una apariencia de discrimen y represalias, ya que solo se utilizó el criterio de las evaluaciones para denegarle la permanencia sin considerar otros como las ejecutorias y las cualidades personales y profesionales.

Mediante carta del 22 de abril de 2020, la JARUM le notificó a la recurrente que el 16 de abril anterior refirió la referida solicitud de reconsideración a un Comité *Ad Hoc*.[6]

A base de lo recomendado por el Comité *Ad Hoc*, el 14 de agosto de 2020, notificada el 17 de agosto posterior, la JARUM emitió la Certificación Número 20-21-011 en la que notificó que decidió no reconsiderar la *Apelación* (reconsideración).[7] La JARUM no advirtió de cualquier remedio post dictamen con que contaba la recurrente.

El 11 de septiembre de 2020, la doctora Figueroa Medina presentó oportuna *Apelación* ante la Junta Universitaria, la cual fue recibida por el ente el 14 de septiembre posterior (*Apelación* 10 (2020-2021) 01).[8]

Es importante señalar que el 21 de septiembre de 2020, la Junta Universitaria emitió una Resolución[9] ordenando el archivo del caso aduciendo que, entre otros incumplimientos, no se presentó el recurso a tiempo y que este no está firmado. El 7 de octubre de 2020, la recurrente solicitó una reconsideración.[10] Entre los argumentos,

---

[5] SUMAC TA, Entrada núm. 9, Anejo 4, a las págs. 4-6.
[6] SUMAC TA, Entrada núm. 9, Anejo 6, a la pág. 4.
[7] SUMAC TA, Entrada núm. 9, Anejo 4, a las págs. 1-4.
[8] SUMAC TA, Entrada núm. 9, Anejo 3, a las págs. 11-20.
[9] SUMAC TA, Entrada núm. 9, Anejo 4, a la pág. 24.
[10] Véase, *Informe* del Oficial Examinador del 13 de octubre de 2022, SUMAC TA, Entrada núm. 9, Anejo 2, a la pág. 1. Véase, además, SUMAC TA, Entrada núm. 9, Anejo 4, a la pág. 25. El escrito está firmado el 2 de octubre de 2020. SUMAC TA, Entrada núm.9, Anejo 5, a la pág. 7.

esta planteó que la determinación del 14 de agosto de 2020 era defectuosa al dejar de advertir el recurso de revisión disponible con expresión de los términos correspondientes.

El 26 de octubre de 2020, la Sra. Soniemi Rodríguez Dávila, Directora de la Oficina de Asuntos Legales de la Administración Central, refirió la *Moción Solicitando reconsideración* de la recurrente al Oficial Examinador, Lcdo. Nigaglioni Arrache, para que evaluara en sus méritos el petitorio y emitiera un informe con sus recomendaciones.[11] Esto, ante el pedido de la Secretaria Ejecutiva de la Junta Universitaria el 21 de octubre anterior.

El 9 de junio de 2021, la Secretaria Ejecutiva de la Junta Universitaria informó al abogado de la recurrente el acuse de la *Apelación* 10 (2020-2021) 01, y que se solicitó el expediente completo del caso, de conformidad con lo dispuesto en el Artículo 13 del *Reglamento sobre Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico.* El documento fue copiado a la JARUM a través del Dr. Jorge Haddock.[12]

A dicha comunicación se le incluyó una carta fechada el 9 de junio de 2020, dirigida al ex Presidente de la JARUM y Rector del RUM, Dr. Agustín Rullán Toro, anejando copia del escrito de *Apelación* de la doctora Figueroa Medina, solicitándole a la JARUM elevar copia del expediente completo del caso, y ordenándole presentar un *Escrito de Contestación* al recurso apelativo de la recurrente dentro del término de treinta (30) días. Allí, la **JARUM fue apercibida de que "[t]ranscurrido dicho término sin que la Parte Apelada haya presentado escrito de contestación, la Junta Universitaria podrá considerar la apelación sin tener ante sí la posición de la Parte Apelada**."[13]

---

[11] SUMAC TA, Entrada núm. 9, Anejo 7, a la pág. 11.
[12] SUMAC TA, Entrada núm. 9, Anejo 7, a la pág. 6.
[13] SUMAC TA, Entrada núm. 9, Anejo 7, a las págs. 7-8. Énfasis nuestro. Entendemos que el año es el 2021 y no 2020 como está escrito. Ello, ante el hecho de que la *Apelación* se presentó el 14 de septiembre de 2020.

El 22 de junio del 2021, la JARUM compareció, por medio de la Lcda. Elba Emmanuelli Zayas, y solicitó que se aceptara su representación legal y se le notificara de todos los escritos a su dirección de correo electrónico.[14] La JARUM informó que sometería su contestación a la *Apelación* una vez se le notificara el expediente del caso.

El 24 de junio de 2021, la Junta Universitaria envió correo electrónico a la JARUM, donde le acusa recibo de la notificación asumiendo representación legal instada, más se le incluyó la copia del expediente de la doctora Figueroa Medina.[15] **Allí se informó que ya habían transcurrido los treinta (30) días para elevar el expediente y para presentar la Contestación a la *Apelación*, no obstante, le concedieron cinco (5) días adicionales para presentar las mismas.** Se le advirtió, además, que transcurrido dicho plazo, el caso se referiría a un Oficial Examinador.

Hacemos notar que la JARUM no presentó su contestación a la *Apelación* incoada por la recurrente ante la Junta Universitaria, a pesar de los términos que le fueron concedidos para ello.

El 13 de octubre del 2022, el Oficial Examinador, licenciado Nigaglioni Arrache, emitió su *Informe* en el que especificó que le fue encomendado por la Junta Universitaria evaluar los méritos de la solicitud de reconsideración incoada por la doctora Figueroa Medina el 7 de octubre de 2020, en la que esta refutó lo determinado por la Junta Universitaria el 21 de septiembre de 2020. Recordemos que este foro universitario había ordenado el archivo de la *Apelación*. El Oficial Examinador concluyó que la *Apelación* presentada por la recurrente el 11 de septiembre de 2020, ante la Junta Universitaria, no quedó perfeccionada a tenor con lo dispuesto en el Artículo 11

---

[14] SUMAC TA, Entrada núm. 9, Anejo 7, a la pág. 9.
[15] Esto, según surge de la *Contestación a Solicitud Urgente...* emitida por la Junta Universitaria el 30 de junio de 2023. SUMAC TA, Entrada núm. 9, Anejo 3, a las págs. 9-10. Véase, además, la nota al calce 21.

del *Reglamento sobre Procedimientos Apelativos de la Universidad de Puerto Rico*, Certificación Núm. 35 (2018-2019).[16] Ello, al no acompañar el pedido con los documentos requeridos.

De otra parte, el Oficial Examinador coligió que la determinación de la JARUM del 14 de agosto de 2020 carecía de las advertencias del derecho de solicitar reconsideración o revisión judicial de la misma con la expresión de los términos correspondientes. Así, coligió que no han comenzado a decursar los términos para presentar una apelación.

Por lo que recomendó a la Junta Universitaria que, para salvaguardar los derechos de las partes, desglosara la *Apelación* de la doctora Figueroa Medina y le ordenara a la JARUM a emitir una nueva determinación con las advertencias expresas de los términos para solicitar reconsideración y/o apelar, según el Artículo 3.14 de la Ley núm. 38-2017 conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG) y el Artículo 27 del *Reglamento sobre Procedimientos Apelativos de la Universidad de Puerto Rico*, Certificación Núm. 35 (2018-2019) de la Junta de Gobierno (*Reglamento*).

El 18 de octubre del 2022, la Junta Universitaria refirió el referido *Informe* del Oficial Examinador, junto con el resto del expediente del caso, a un Comité de Apelación designado para la evaluación y correspondientes recomendaciones en torno a la *Apelación* interpuesta por la doctora Figueroa Medina.[17]

El 25 de mayo de 2023, el Comité de Apelación emitió un *Informe de Descarga del Comité de Apelación del caso de la Dra. Carmen I. Figueroa Medina* a la Junta Universitaria.[18] En este, se concluyó que la decisión de la JARUM "es contraria a su Manual de

---

[16] SUMAC TA, Entrada núm. 9, Anejo 2, a las págs. 1-5; y Anejo 3, a las págs. 1-4.
[17] SUMAC TA, Entrada núm. 9, Anejo 9, a la pág. 4.
[18] SUMAC TA, Entrada núm. 9, Anejo 1, a las págs. 12-17.

Procedimiento para la Evaluación de Personal Docente (Certificación 86-87-476 JA UPR-RUM) al haber actuado de manera arbitraria e irrazonable al acordar "... denegar la permanencia como miembro del Personal docente de la Universidad de Puerto Rico, debido a que sus evaluaciones son bajas, con tendencia a disminuir" en su reunión del 20 de febrero de 2020. Agregó que el promedio total de las evaluaciones alcanzado por la doctora Figueroa Medina, para los años evaluados, fue de 4.00, habiendo sido 3.48 de 4.00 para el año 2017-2018, y 3.01 para el primer semestre del año 2019-2020.

Por lo que el Comité de Apelación recomendó que se le otorgue la permanencia a la recurrente como miembro del Personal Docente de la Universidad de Puerto Rico.

Así, analizados los informes del Oficial Examinador y del Comité de Apelación, la Junta Universitaria decidió declarar *Ha lugar* a la *Apelación* 10 (2020-2021) 01 instada por la doctora Figueroa Medina mediante la Certificación 52 (2022-2023) emitida el 28 de junio de 2023.[19] Surge de la antedicha Certificación que la Junta Universitaria recomendó que se le otorgue la permanencia a la doctora Figueroa Medina como miembro del personal docente de la UPR. Se incluyeron con el dictamen, el Informe del Comité de Apelación y el del Oficial Examinador de la Junta Universitaria.

El 29 de junio de 2023, la Junta Universitaria notificó a las partes por correo electrónico la decisión de la *Apelación* incluyendo a la JARUM. Al próximo día, 30 de junio de 2023, la JARUM presentó ante la Junta Universitaria *Solicitud Urgente para que se Deje sin Efecto Determinación Contenida en Certificación 52 JU (2022-2023) y/o Solicitud de Reconsideración por Incumplimiento de la Certificación 35 (2018-2019) Reglamento de Procedimientos*

---

[19] Véase, el Sistema de Unificado de Manejo y Administración de Casos del TA (SUMAC TA), Entrada núm. 9, Anejo 1, a las págs. 5-7.

*Apelativos Administrativos de la UPR*.[20] Mediante esta se arguyó que se violentaron las disposiciones del *Reglamento* ante la falta de notificación a la JARUM de los documentos, a partir de junio de 2021. Allí peticionó que se dejara sin efecto la determinación de la Junta Universitaria, que se ordenara la notificación a la JARUM de todo el expediente del trámite ante la misma, y que se le concediera término para someter contestación y alegato.

El mismo 30 de junio de 2023, la Junta Universitaria emitió su *Contestación a Solicitud Urgente ...* instada por la JARUM, denegando el petitorio.[21] En el dictamen se realizó un recuento procesal y se apuntaló que se le había enviado el expediente de la doctora Figueroa Medina y que se concedió término a la JARUM para presentar su contestación a la *Apelación*, lo cual no hizo. Asimismo, se le aclaró, respecto al argumento de que no se le había notificado documento a partir de junio de 2021, que la Junta Universitaria solo contesta planteamientos de las partes apelante o apelada; y al no haber ninguno, se prosiguió el proceso apelativo hasta culminar con la decisión arribada.

El 28 de julio de 2023, la JARUM presentó una *Apelación* ante la Junta de Gobierno solicitando que se revocara y que se dejara sin efecto la concesión de la permanencia que determinó la Junta Universitaria en la Certificación 52 (2022-2023).[22] La solicitud de la JARUM se basó en que la determinación antes mencionada no cumplió, en especial, con el Artículo 15 del *Reglamento de Procedimientos Apelativos Administrativos de la UPR*, Certificación 35 (2018-2019), intitulado *Anotación de Rebeldía*. Ello, debido a que no fue notificada de haber sido declarada en rebeldía, más no se le informaron los fundamentos para la misma, ni el recurso de revisión

---

[20] SUMAC TA, Entrada núm. 9, Anejo 3, a las págs. 5-8.
[21] SUMAC TA, Entrada núm.9, Anejo 3, a las págs. 9-10.
[22] SUMAC TA, Entrada núm.9, Anejo 1, a las págs. 1-4.

disponible. Por lo que, arguyó que la Certificación 52 (2022-2023) es nula.

A su vez planteó que, a la fecha en que la Junta Universitaria le notificó de su deber de contestar la *Apelación*, la Junta Universitaria había desestimado y archivado el pedido por falta de jurisdicción, y se encontraba pendiente de resolución una moción de reconsideración instada por la recurrente, lo cual fue evaluado por el Oficial Examinador. Este, en su informe del 13 de octubre de 2022, recomendó el desglose de la *Apelación,* más que la JARUM advirtiera de los remedios posteriores a su decisión.   Añadió que nunca le fue notificado el resultado de la resolución de la reconsideración, ni el Informe del Oficial Examinador. Expuso, además, que la determinación de la Junta Universitaria es contraria a lo recomendado por su propio Oficial Examinador quien solo advirtió que se devolviera el caso ante la JARUM "no haciendo recomendaciones en torno a los méritos de la Apelación."

El 2 de octubre de 2023, la recurrente presentó una *Oposición a Apelación* en la que solicitó a la Junta de Gobierno que denegara la *Apelación* de la JARUM y, en consecuencia, sostuviera la determinación de su permanencia como miembro del Personal Docente de la Universidad de Puerto Rico. En el escrito, la doctora Figueroa Medina advirtió que "La solicitud de la Junta Administrativa se basa únicamente en la alegación de que la determinación antes mencionada no cumplió con las disposiciones del *Reglamento de procedimientos Apelativos Administrativos de la UPR,* Certificación 35 (2018-2019) porque nunca fue notificada de haber sido declarada en rebeldía. La Junta [Administrativa], en forma alguna, cuestiona en su apelación los fundamentos sobre los cuales se basó la Junta Universitaria para declarar Ha Lugar a la Apelación de la doctora Figueroa y, en consecuencia, otorgarle la

permanencia."[23] Además, adujo que la JARUM fue apercibida de contestar su *Apelación* lo que falló en realizar aun cuando se le otorgó un plazo adicional.

El 28 de agosto de 2025, notificada el 4 de septiembre de 2025, la Junta de Gobierno emitió la determinación recurrida intitulada *Decisión de Apelación de la Junta de Gobierno (DAJG) 1 (2025-2026) (Decisión)*. Mediante esta, el ente universitario declaró *Ha Lugar* a la *Apelación* presentada por la JARUM.[24] Surge de la *Decisión* recurrida que la Junta de Gobierno acogió los fundamentos del *Informe de la Oficial Examinadora* que recomendó se declarara con lugar la apelación interpuesta por la JARUM y que se revocara la decisión de la Junta Universitaria del 28 de junio del 2023, Certificación 52 (2022-2023).

En el *Informe de la Oficial Examinadora*,[25] la Lcda. María Soledad Ramírez-Becerra, del 27 de mayo de 2025, esbozó cincuenta y tres (53) determinaciones de hechos incontrovertidos. Acorde con estos y con el derecho esbozado recomendó declarar Ha Lugar a la *Apelación* instada por la JARUM y en su consecuencia, se revocara la decisión de la Junta Universitaria de otorgarle la permanencia docente a la doctora Figueroa Medina.

Inconforme, el 24 de septiembre de 2025, la recurrente presentó una *Moción de Reconsideración* solicitándole a la Junta de Gobierno que denegara la apelación de la JARUM y, en consecuencia, sostuviera la determinación de la permanencia como miembro del Personal Docente de la Universidad de Puerto Rico. La Junta de Gobierno no actuó dentro del término de quince (15) días, por lo que el pedido se entendió rechazado de plano.

---

[23] SUMAC TA, Entrada núm. 9, Anejo 9, a la pág. 14.
[24] SUMAC TA, Entrada núm. 1, Anejo 2, a las págs. 1-3.
[25] SUMAC TA, Entrada núm. 9, Anejo 13, a la págs. 15-21, y Anejos 14-19. Véase, además, SUMAC TA, Entrada núm. 1, Anejo 2, a las págs. 4-63.

Todavía insatisfecha, y oportunamente, la recurrente presentó el recurso de revisión judicial que nos ocupa y señaló que la agencia incurrió en los siguientes errores:

> PRIMER ERROR: ERRÓ LA JUNTA DE GOBIERNO DE LA UNIVERSIDAD DE PUERTO RICO AL RESOLVER QUE LA JUNTA UNIVERSITARIA INCUMPLIÓ CON EL DERECHO Y REGLAMENTACIÓN APLICABLE, AL CONCLUIR, QUE LA JUNTA ADMINISTRATIVA DEL RECINTO UNIVERSITARIO DE MAYAGÜEZ, HABÍA ERRADO AL DENEGARLE LA PERMANENCIA DOCENTE A LA DRA. FIGUEROA MEDINA POR HABER ÉSTA OBTENIDO UN PROMEDIO TOTAL DE 4.00 EN SUS EVALUACIONES ACADÉMICAS.

> SEGUNDO ERROR: ERRÓ LA JUNTA DE GOBIERNO DE LA UNIVERSIDAD DE PUERTO RICO AL EXCEDER LOS LÍMITES DE SU JURISDICCIÓN REVISORA Y RESOLVER ASUNTOS NO PLANTEADOS EN LA APELACIÓN PRESENTADA POR LA JUNTA ADMINISTRATIVA DEL RECINTO UNIVERSITARIO DE MAYAGÜEZ, OTORGANDO UN REMEDIO NO SOLICITADO Y, EN CONSECUENCIA, VIOLENTANDO EL DEBIDO PROCESO DE LEY DE LA DRA. CARMEN FIGUEROA MEDINA.

El 12 de noviembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 12 de diciembre de 2025 para expresarse. Asimismo, se le ordenó a la UPR proveer copia certificada del expediente administrativo. El 4 de diciembre se cumplió con lo ordenado y el 22 de diciembre posterior presentó su alegato. Así nos dimos por cumplidos y decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Revisión de las decisiones administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder

una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Buxó Santiago v. ELA et. als.*, 2024 TSPR 130, 215 DPR ___ (2024). *Specialty et al. II.*, 179 DPR 923, 940 (2010).[26]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder cuando: (1) la misma no esté basada en evidencia sustancial; (2) la agencia erró en la aplicación o interpretación de las leyes y el reglamento; (3) su actuación resulte ser una arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

---

[26] Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003); *Transp. Sonell v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024).

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota*, 163 DPR 716, 728 (2005). En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota*, supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006), citando a *Otero v. Toyota,* supra.

**El Debido Proceso de Ley**

En su concepción abarcadora, el debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012) citando a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). Por tanto, el procedimiento adjudicativo ante las agencias debe ceñirse a las garantías mínimas del debido proceso de ley. *PVH Motor v. ASG*, 209 DPR 122, 131 (2022).

La dimensión procesal del debido proceso de ley en el contexto adjudicativo exige como mínimo: (1) **la notificación adecuada del proceso**; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *Íd.*; *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 399 (2011); *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010). Estas salvaguardas constitucionales se encuentran, de igual forma, reconocidas en la *Carta de Derechos* de la Ley núm. 38 de 30 de junio de 2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.* (LPAUG). Adicionalmente, la Sección 3.1 de la LPAUG, 3 LPRA sec. 9641, enumera las garantías procesales que deben ser salvaguardadas en todo procedimiento adjudicativo celebrado ante una agencia, como lo son: **la notificación oportuna de los cargos o reclamos contra una parte**, a presentar evidencia, a una adjudicación imparcial y **que la decisión sea basada en el expediente**. Además, nuestro alto foro ha establecido que la garantía de notificación, salvaguardada por el debido proceso de ley, debe caracterizarse como "real y efectiva, ajustada a los preceptos estatutarios aplicables". [citas omitidas]. *PVH Motor v. ASG,* supra.

Por último, es sabido que, en el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *PVH Motor v. ASG*, supra; *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009); *Almonte et al. v. Brito*, 156 DPR 475, 481 (2002). Esto obedece en gran medida a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. *Román Ortiz v. OGPe*, 203 DPR 947, 954 (2020); *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010). **Sin embargo, se ha reiterado que el procedimiento adjudicativo administrativo debe de ser justo en todas sus etapas y tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate.** *Román Ortiz v. OGPe*, supra; *Álamo Romero v. Adm. de Corrección*, supra, a la pág. 330.

### III.

En esencia, la recurrente señaló que la Junta de Gobierno erró al resolver que la Junta Universitaria incumplió con el derecho y reglamentación aplicable, al concluir, que la JARUM había errado al denegarle la permanencia docente por ella haber obtenido un promedio total de 4.00 en sus evaluaciones académicas. Asimismo, expuso que la Junta de Gobierno incidió al exceder los límites de su jurisdicción revisora y resolver asuntos no planteados en la apelación presentada por la JARUM otorgando un remedio no solicitado y, en consecuencia, violentando el debido proceso de ley de la recurrente.

En especial, la recurrente planteó que la Junta de Gobierno se excedió al resolver, sin que le fuera solicitado, que la JARUM no había errado al denegarle la permanencia a la doctora Figueroa Medina. En este sentido, advierte que la *Apelación* presentada por

la JARUM, el 28 de julio de 2023 ante la Junta de Gobierno, se basó únicamente en la alegación de que la determinación del 28 de junio de 2023, mediante la cual la Junta Universitaria declaró Ha Lugar a la *Apelación,* presentada por la recurrente, incumplió con las disposiciones del Reglamento de Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico, Certificación 35 (2018-2019) porque, alegadamente, nunca fue notificada de haber sido declarada en rebeldía.

Por ello, razona que la JARUM, en forma alguna, cuestionó en su petitorio los fundamentos sobre los cuales se basó la Junta Universitaria para declarar Ha Lugar a la *Apelación* de la doctora Figueroa Medina y, en consecuencia, otorgarle su permanencia. Por tanto, esta apuntala que la Junta de Gobierno se extralimitó al otorgar un remedio que no le fue solicitado, lo que tiene el efecto de violentarle su derecho a un debido proceso de ley.

De igual forma, la recurrente expresa que la Junta de Gobierno se equivocó como, cuestión de derecho, al acoger el Informe de la Oficial Examinadora quien descartó, sin fundamento válido en derecho, la autoridad de la Junta Universitaria para resolver en los méritos como lo hizo.

De entrada, debemos subrayar que, para resolver las controversias ante nuestra consideración, discutiremos en conjunto los señalamientos de error argüidos por la doctora Figueroa Medina relativos a que la Junta de Gobierno se extralimitó al otorgar un remedio que no le fue solicitado, lo que tiene el efecto de violentarle su derecho a un debido proceso de ley.

Como bien expone la recurrente, en el *Informe de la Oficial Examinadora* preparado por la Lcda. María Soledad Ramírez-Becerra del 27 de mayo de 2025, el cual fue acogido en su totalidad por la Junta de Gobierno en la *Decisión* recurrida, se estableció

claramente que la JARUM instó la *Apelación* imputando los siguientes errores a la Junta Universitaria:

- La determinación de la JU fue a todos los efectos una en rebeldía la cual incumplió con el Artículo 15 del Reglamento de Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico13 que requiere, previo a toda decisión en rebeldía, que se le notifique, por escrito, a la parte contra la cual se anota la rebeldía, de dicha determinación, los fundamentos para la misma y el recurso de revisión disponible.
- A la fecha en que la JU alegadamente notificó a la JARUM de su deber de contestar la apelación, la JU había desestimado y archivado la apelación interpuesta por la Dra. Figueroa Medina, por falta de jurisdicción, y se encontraba pendiente la resolución de una moción de reconsideración presentada por ésta, la cual fue evaluada por el Oficial Examinador de la JU. Éste, mediante Informe del 13 de octubre del 2022, recomendó se desglosara la apelación y se le ordenara a la JARUM a advertirle a las partes de los remedios posteriores a su decisión. La JARUM adujo que la JU nunca le notificó del resultado de la Moción de Reconsideración presentada por la Dra. Figueroa Medina, como tampoco le notificó del Informe del OEJU previo a que la JU emitiera la determinación apelada.
- La JU incumplió con su deber de notificarle de los escritos y órdenes subsiguientes en el caso aun cuando la JARUM no sometió su alegación responsiva (citando a Banco Popular v. Andino Solís, 2015 T.S.P.R. 003).
- La determinación de la JU es contraria a las recomendaciones de su propio Oficial Examinador quien recomendó se devolviera el caso a la JARUM, **no haciendo recomendaciones algunas en torno a los méritos de la apelación**.

Lo anterior es cónsono con los argumentos esgrimidos por la JARUM en la *Apelación* instada el 28 de julio de 2023, según explicamos previamente. Así pues, no encontramos que en la *Apelación* se hubiesen señalado errores incurridos por la Junta Universitaria sobre los méritos para la concesión de la permanencia a la doctora Figueroa Medina.

No obstante lo antedicho, la Oficial Examinadora entró a dilucidar controversias ajenas a los argumentos planteados por la JARUM en la *Apelación* ante la Junta de Gobierno. Recordemos que el debido proceso ley en su vertiente procesal exige que la persona que es objeto de un proceso administrativo tiene que ser informada adecuadamente de los reclamos en su contra para poder preparar

una defensa o argumentos cónsonos con estos. Asimismo, precisa destaca que el debido proceso de ley le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad, en este caso la permanencia docente, se realice mediante procedimiento justo y equitativo. *Vázquez v. Municipio de San Juan*, 178 DPR 636, 645 (2020). Añadimos a esto que el proceso no puede ser objeto de elementos sorpresas. Ello, máxime cuando la persona agraviada desconoce que el curso decisorio agencial no corresponde a lo reclamado en su contra, según ocurrió en este caso.

En este sentido, reiteramos que la JARUM, en la *Apelación* instada ante la Junta de Gobierno, adujo que la determinación de la Junta Universitaria, Certificación 52 (2022-2023), era contraria a derecho solo por incumplirse ciertos trámites procesales y reglamentarios que incidieron sobre su derecho a tramitar el caso. Lo que se reitera en el escrito ante nuestra consideración. Es decir, no cuestionó los fundamentos primarios evaluados y adjudicados por la Junta Universitaria para determinar conceder la permanencia a la doctora Figueroa Medina. Más aún, en el referido petitorio apelativo la JARUM expresó claramente que "La determinación apelada es contraria a las recomendaciones de su propio Oficial Examinador que recomendó que se devolviera el caso. **El informe no hace recomendaciones en cuanto a los méritos de la apelación, por lo que no se puede atribuirse a sus recomendaciones la determinación en los méritos de la JU**."

Como explicamos, la Sección 3.1 de la LPAUG, *supra,* enumera las garantías procesales que deben ser salvaguardadas en todo procedimiento adjudicativo celebrado ante una agencia, como lo son: **la notificación oportuna de los cargos o reclamos contra una parte**, a presentar evidencia a una adjudicación imparcial y **que la decisión sea basada en el expediente**.

Por tanto, recalcamos que el proceso decisorio apelativo administrativo no puede dejarse al arbitrio de una de las partes, ni menos a lo que entienda el juzgador designado sin ajustarse exclusivamente al expediente. Al respecto, el *Reglamento de Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico*, Certificación Núm. 35 (2018-2019), emitido por la Junta de Gobierno el 2 de octubre de 2018, en el Artículo 27- *Disposición del caso en Apelación*, preceptúa, que "A. El expediente de la apelación constituirá la base exclusiva de la decisión de la misma."

Apuntalamos, además, que los procedimientos adjudicativos administrativos, aunque en un nivel menos riguroso, están sujetos a la garantía constitucional del debido proceso de ley que dimana de la Constitución del Estado Libre Asociado de Puerto Rico.[27]

De otra parte, no nos convence el argumento esgrimido por la UPR en el escrito de oposición ante nuestra consideración al expresar que:[28]

> Segundo, la Apelación de la JARUM ante la Junta de Gobierno procuraba la revocación y/o nulidad de la determinación de la Junta Universitaria por vicios procesales que la privaron de participar y oponerse en los méritos. ...
>
> Conforme lo reconoce la propia Recurrente, la norma de revisión judicial es que se puede conceder el remedio apropiado si se determina que el promovente tiene derecho a un remedio. Recurso de Revisión, pág. 27, citando Sección 4.5 de la LPAU. **Por lo tanto, por analogía, la JG tenía la facultad de conceder el remedio que procede en derecho, aun si la JARUM no lo hubiera solicitado expresamente.**
>
> Tercero, aun cuando la Parte Recurrente articule sus planteamientos desde una perspectiva particular, es norma reiterada que la revisión se dirige contra el dictamen, y el foro revisor puede sostener o revocar una determinación por los fundamentos correctos en derecho, conforme surjan del expediente y del ordenamiento aplicable.
>
> Los foros revisores, en casos de revisión como el de autos, ciertamente pueden resolver una controversia judicial apoyados en los fundamentos de derecho que sean correctos, independientemente de los que se hayan alegado o de los que haya utilizado originalmente el foro cuya decisión se revisa. Vélez Rodríguez v. Amaro Cora, 138 DPR 182 (1995); Collado v. E.L.A., 98 D.P.R. 11 (1969); Rodríguez v. Serra, 90 D.P.R. 776

---

[27] *PVH Motor v. ASG*, supra; *Álamo Romero v. Adm. de Corrección*, supra, a la pág. 329; *Almonte et al. v. Brito*, supra.
[28] Véase, *Alegato en Oposición*, a las págs. 18-20. Énfasis nuestro.

(1964), citados en *Zavala Vázquez v. Mun. de Ponce*, 139 DPR 548 (1995).
**Por lo tanto, una vez la JG revisa el dictamen, puede conceder el remedio que en derecho proceda y puede, como en efecto hizo, revocar el dictamen por otro fundamento**. ...

De lo previamente transcrito, nos corresponde advertir que ello resulta ser un planteamiento errado en derecho debido a que se pretende equiparar el alcance de la revisión apelativa interna en la agencia al de la revisión judicial que realiza este foro intermedio. Asimismo, el foro universitario hace una aplicación errónea del derecho citado en su oposición, y sostiene la decisión de la agencia a un estándar de revisión incorrecto, el cual también abre las controversias a decisiones irrazonables, caprichosas, parcializadas y arbitrarias.

Así pues, entendemos necesario precisar que las mencionadas doctrinas apelativas y las facultades adscritas a esta *Curia* corresponden a este honorable cuerpo y no a la revisión dentro de los distintos foros de la agencia, como ocurre en este caso. En este aspecto, dichos estándares de revisión aplican de este foro intermedio hacia el organismo recurrido y no internamente en el proceso de revisión administrativa en el propio ente gubernamental.

Por tanto, reiteramos que el procedimiento administrativo ante la Junta de Gobierno no se realizó conforme las exigencias claras del debido proceso de ley, ni se cumplieron con las exigencias procesales de la LPAUG garantes del mismo. En consecuencia, no podemos brindarles la deferencia reconocida a las decisiones de las agencias administrativas. Según explicamos, el raciocinio del organismo agencial no se basó en evidencia sustancial a base de los hechos específicos del caso, según los reclamos esbozados en la *Apelación* instada por la JARUM, lo que resulta en una actuación arbitraria e irrazonable.

En consecuencia, los errores imputados fueron cometidos.

**IV.**

Por los fundamentos antes expuestos, procede revocar la *Decisión* recurrida emitida por la Junta de Gobierno de la UPR.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones